CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 3 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

JACQUELINE Y. MINIFIELD,　　　　　)
as Administrator and Personal　　　　)
Representative of the Estate of　　　　)
D'LONDRE MINIFIELD and in　　　　)
her Individual Capacity,　　　　　　)　　　Civil Action No. 5:17cv43
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　By:　Michael F. Urbanski
v.　　　　　　　　　　　　　　　)　　　Chief United States District Judge
　　　　　　　　　　　　　　　　)
CITY OF WINCHESTER, et al.,　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

## MEMORANDUM OPINION

This matter is before the court on defendant Stephanie Sills' Motion for Summary Judgment, ECF No. 198, and plaintiff Jacqueline Y. Minifield's Second Motion to Amend/Correct the Fourth Amended Complaint ("Complaint"). ECF No. 201.[1] The issues have been fully briefed, and argument was heard on February 13, 2020. For the reasons stated in open court and those set forth herein, because material facts are in dispute as to the circumstances of D'Londre Minifield's death, the motion for summary judgment as to Counts Two and Six of the Fourth Amended Complaint is **DENIED**. As to the motion to amend, given the procedural history of this case and potential prejudice to defendants previously dismissed with prejudice from this case, Minifield's request to reassert Count Three against any previously dismissed defendant is **DENIED**. However, because of the lack of prejudice

---

[1] Deputy Kristen Bradford filed a motion for sanctions in her response to plaintiff's motion to amend the complaint to add back multiple defendants including Bradford, ECF No. 204, and requested sanctions at the February 13, 2020 hearing. Given the ruling denying plaintiff's request to bring Bradford back into this case, Bradford's motion for sanctions is **DENIED**.

to the sole remaining defendant, Stephanie Sills, Minifield's motion to reassert a claim alleging a conspiracy in violation of 42 U.S.C. § 1983 to cover up the shooting is **GRANTED**.[2]

## I.

To say that this case has been a procedural nightmare would be an understatement. Due in no small part to the transition in plaintiff Minifield's counsel and her ever-shifting pleadings, the resolution of this case has been needlessly delayed.

To set the stage for the court's consideration of the pending motions, retracing the tortured procedural history of this case is necessary. The original complaint was filed on May 1, 2017 against the City of Winchester, its police chief Kevin Sanzenbacher, and 15 Jane and John Doe defendants. Compl., ECF No. 1. The original complaint contained fourteen counts, including excessive force, wrongful death, civil rights violations, conspiracy, and other state law claims. Foreshadowing a consistent pattern in this case, after defendants responded with a motion to dismiss, plaintiff promptly consented to drop four counts against the City of Winchester. Order, ECF No. 25. Plaintiff's counsel Bradley G. Pollack moved to withdraw. Motion to Withdraw, ECF No. 29. Withdrawal and retention of new counsel delayed the hearing on the remaining portion of defendants' motion to dismiss. Order, ECF No. 30. Roger I. Roots and David Carl Johnson entered appearances on November 10, 2017 on behalf of plaintiff.[3] Due to the change of plaintiff's counsel, the trial was continued from July 16, 2018 to December 17, 2018. Order, ECF No. 37.

---

[2] As explained herein, because Minifield did not allege racial animus motivating the cover-up, a claim for conspiracy under 42 U.S.C. § 1985(3) is futile and will not be allowed to proceed to trial.
[3] Although Roots is no longer counsel of record, Johnson remains counsel of record on the docket. At the hearing on February 13, 2020, the court inquired as to his status as counsel in this case. Plaintiff's current

On January 18, 2018, the court held a hearing on the pending portion of the motion to dismiss. At the hearing, plaintiff's counsel announced that they would be tendering an amended complaint, obviating the need to address the pending motion to dismiss. Minute Entry, ECF No. 40. The court granted leave to amend and denied the pending motion to dismiss as moot. Order, ECF No. 42.

The First Amended Complaint was filed on February 2, 2018, reasserting claims against the City of Winchester and Police Chief Kevin Sanzenbacher, as well as adding thirteen individual members of the Winchester Police Department, eleven Virginia State Police defendants, and Kristin Bradford, a deputy with the Frederick County Sheriff's Department. First Am. Compl., ECF No. 50. Within ten days, plaintiff moved to file a Second Amended Complaint to make corrections regarding certain named defendants. Motion, ECF No. 52. Leave to amend was granted on February 13, 2018. Order, ECF No. 53. Another ten days passed, and plaintiff sought leave to file a Third Amended Complaint, which was granted. Order, ECF No. 61. The Third Amended Complaint contained eleven counts against twenty-seven defendants. Corrected Third Am. Compl., ECF No. 62.

Motions to dismiss the Third Amended Complaint were filed and briefed, and argument on the motions was set for July 6, 2018. In the meantime, plaintiff's counsel changed again. On April 19, 2018, Deborah Whitlock, of the Georgia Bar, moved for admission to represent plaintiff, and was admitted pro hac vice on April 20, 2018. ECF Nos. 86 and 87. On

---

counsel, Christopher Brown, indicated that Johnson no longer intends to be counsel, but has filed no motion to withdraw. Absent a motion and order effecting Johnson's withdrawal, he remains counsel of record in this case.

July 5, 2018, current counsel Christopher Brown noticed his appearance as counsel of record for plaintiff, and Bradley Pollack noticed his reappearance. Notices, ECF Nos. 106 and 109.

Also on July 5, 2018, the afternoon before the scheduled hearing on the motion to dismiss, new counsel of record for plaintiff Christopher Brown moved to continue the hearing, informing the court that he intended to file a Fourth Amended Complaint, "agree[ing] that the operative complaint needs to be amended to streamline the claims, more clearly present the facts, avoid conclusory allegations, and generally improve upon the pleading." Mem. in Supp. of Minifield's Mot. to Reschedule Defs.' Mot. to Dismiss, ECF No. 108, at 2.

The hearing was held on July 6, 2018 as scheduled, and an order was entered on July 13, 2018. The order stated that "[d]uring the hearing, counsel for Plaintiff conceded that the Complaint — which already was filed upon her notice of appearance — was confusing, included claims that merited dismissal and required amendment." Order, ECF No. 112, at 1. The order stated that "[a]s more fully explained on the record, the Complaint in its current iteration is not sufficiently pled. The Complaint's incomprehensible claims and conclusory allegations do not meet the minimum requirements of Rule 8." Id. at 1-2. The court dismissed the Complaint without prejudice and granted plaintiff "leave to amend the complaint *for the fourth and final time.*" Id. at 2 (emphasis in original).

On August 14, 2018, plaintiff filed her Fourth Amended Complaint, this time containing six counts against sixteen defendants. ECF No. 117. Defendants promptly filed new motions to dismiss, and plaintiff responded in a brief filed on September 18, 2018 by agreeing to dismiss certain counts and defendants, as follows:

> Preliminarily, Defendant City is correct regarding the dismissal of
> certain Defendants. Plaintiff further wishes to dismiss Count I
> and Count V with prejudice; and Count III (Conspiracy), officers
> Enke, Medina, Brunson, King, Harvey, Shelton, and Deputy
> Bradford *without prejudice* as discovery may reveal evidence to
> support the Conspiracy Count. The Fourth Amended Complaint
> will proceed against Winchester (Count IV — Monell liability) and
> Officers Ivins and Sills (one of the two shot Minifield; Count II
> — Excessive Force), and the individual officers again for Count
> VI — Wrongful Death).

Consol. Opp'n to Defs.' Mots. To Dismiss, ECF No. 128, at 2 (emphasis in original). Plaintiff

confirmed this position at the hearing held on October 31, 2018. Minute Entry, ECF No.

132. As reflected in the order entered on November 2, 2018, at that hearing, "the court and

the parties largely agree[d] that this excessive use of force and wrongful death case needs to

move forward against only a few defendants. During the hearing, counsel for the plaintiff

conceded that a number of defendants should be dismissed from the action, Counts One and

Five should be dismissed with prejudice, and Count Three should be dismissed without

prejudice. Defendants objected to dismissal of Count Three without prejudice, arguing it

should be dismissed with prejudice. After hearing argument, the court ordered dismissal of

"Counts 1 and 5 with prejudice by agreement of the parties," and dismissal of "Count 3 with

prejudice as the plaintiff admitted that she has no basis for the claim at this time and only

hopes to learn of evidence during the course of discovery." Order, ECF No. 134, at 1-2. As

regards Counts Two and Six, the order stated as follows:

> For Counts 2 and 6, the plaintiff conceded that all defendants but
> Christopher Ivins and Stephanie Sills should be dismissed. The
> plaintiff also agreed that Count 6, which currently alleges both
> wrongful death and survival claims, should be limited to wrongful
> death. The defendants argued that the counts in their entirety
> should be dismissed for failure to state a claim. The court finds

that the plaintiff's allegations of a police shooting resulting in
death are sufficient to overcome Rule 12(b)(6) for the claims of
excessive use of force under 42 U.S.C. § 1983 and wrongful death
against Ivins and Sills. The remaining defendants shall be
dismissed from Counts 2 and 6. The court also finds that it is
appropriate for Count 6 to move forward with only the wrongful
death portion of the claim.

Id. at 2.

Attempting to reconcile the arguments concerning dismissal with versus without
prejudice, the court stated:

Although the court is dismissing multiple counts from the Fourth
Amended Complaint with prejudice, the plaintiff may seek leave
of court to add these counts back to the complaint if she can
show good cause, based on evidence found during the course of
discovery or by other means, that these dismissals were
erroneous. However, given the pleading history of the case, the
court will scrupulously evaluate any attempts by the plaintiff to
renew these claims. At this time, the court shall not award
sanctions against the plaintiff.

Id. at 3. Plaintiff conceded further that Count Four, alleging a municipal liability claim under

Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), against the City of

Winchester, should be limited to an alleged failure to train akin to City of Canton, Ohio v.

Harris, 489 U.S. 378 (1989). Trial was rescheduled for July 8, 2019.

Due to scheduling issues with witnesses, the parties moved to continue the case, and it

was reset for August 5, 2019. Mot. and Order, ECF Nos. 146 and 147. The deadline for

completion of discovery was extended, and defendants filed motions for summary judgment.

A hearing was held on July 10, 2019, at which time plaintiff conceded that "there is no question

of material fact as to whether Officer Ivins used excessive force against D'Londre Minifield. All plaintiff's arguments now center on Officer Stephanie Sills." Order, ECF No. 174, at 1.

The court granted summary judgment for the City of Winchester on Count Four, alleging a failure to train under <u>Monell</u> and took under advisement the motion for summary judgment on Counts Two and Six against Officer Sills because certain eyewitnesses to the incident recently had been located and needed to be deposed. <u>Id.</u>

At oral argument, counsel for Minifield sought leave of court to bring back Count Three, which he had abandoned nine months previously. Minifield filed a motion to amend the next day, and the court heard argument on July 17, 2019. In a written Order entered on July 19, 2019, the court denied the motion to resuscitate Count Three, reasoning as follows:

> At the hearing, no facts revealed in discovery were presented in support of the motion. Rather, plaintiff's counsel pegged his motion on the fact that a number of Winchester police officers had filed declarations in support of the motion for summary judgment, suggesting to him an ongoing conspiracy to cover up the true facts surrounding Minifield's death. Most of the declarations filed by Winchester police officers recite, in cursory fashion, their involvement with the events surrounding Minifield's death and authenticate reports they filed on the events. Other declarants provided details of accreditation and training information about the Winchester police department. The declaration of John Defilippi, a Virginia State Police crime investigator, was the most extensive, authenticating the report he prepared on the death and attaching myriad investigative documents.
>
> To be clear, plaintiff's counsel does not suggest that any facts contained in the declarations and reports provide any new basis to contend that a conspiracy existed to cover up the circumstances surrounding Minifield's death. Rather, counsel argued that he should be allowed to renew his conspiracy claim

7

on the eve of trial simply because of the filing of the declarations. Plaintiff's counsel argued that these declarations were false and in furtherance of a conspiracy to cover up the true facts surrounding Minifield's death. As such, counsel argued that the filing was outside the scope of the officers' employment, obviating the bar he perceived to exist to bringing this claim under the intracorporate conspiracy doctrine.

This is not a case where new evidence has been discovered supporting the renewal of an abandoned claim. Instead, plaintiff's counsel claims he should be allowed to resuscitate his previously abandoned claim based solely on the fact that Winchester police officers signed declarations supporting the summary judgment motion, most of which do little more than serve to authenticate, for Rule 56 purposes, police reports long available in discovery.

Order, ECF No. 175, at 4-5. Applying the Foman v. Davis, 371 U.S. 178, 182 (1962), factors, the court concluded that "[b]oth because the motion is not supported by the revelation of any newly discovered facts and because of the prejudice to defendants occasioned by such an amendment following the summary judgment motion and so close to trial, the court must deny the motion to add back previously dismissed Count Three." Id. at 6.

In the meantime, two persons present at the scene, Aaliyah Green and Kelly Grafton, were deposed, and concerns were raised about the authenticity of a previously filed declaration bearing a signature that Ms. Green disavowed in her deposition. As a result of this extraordinary revelation, the parties sought leave to continue the case, Mot., ECF No. 177, which, after hearing, was granted. Minute Entry and Order, ECF Nos. 183, 186. Because of the court's pending criminal trial docket, a new trial date could not be obtained until January 6, 2020. The case was later continued to the present trial date of April 13, 2020 because of

defendant Sills' military deployment. Mot. and Order, ECF Nos. 188, 190, 191, and 193. In January 2020, Minifield was able to depose Kayla Friesan, a claimed third eyewitness.

## II.

On January 22, 2020, defendant Sills filed a renewed motion for summary judgment, Mot., ECF No. 199, and plaintiff filed a second motion to amend his complaint to reallege Count Three and add back previously dismissed defendants. Mot., ECF No. 201. A hearing was held on these motions on February 13, 2020. Minute Entry, ECF No. 213.

At the hearing, the court denied the renewed motion for summary judgment as to Counts Two and Six filed by defendant Sills, reasoning that material issues of fact existed as to the circumstances of D'Londre Minifield's death given the deposition testimony of witnesses Green, Grafton, and Friesen that they saw D'Londre Minifield draped over a chain-link fence and subsequently taken to the ground by officers.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

Sills, as the movant, was unable to carry her burden of showing that there was no genuine issue of material fact for the jury to resolve. Whether a fact is material depends on the

relevant substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> (citation omitted). Sills argued that the only issue of material fact to the cause of actions in this case was whether she had shot and killed D'Londre Minifield. She argued that the forensic evidence undisputedly established that D'Londre D'Londre Minifield's gunshot wound was a contact wound, rendering impossible plaintiff's theory that D'Londre Minifield was shot from a distance while on the fence and removed to the ground by officers. Sills argued that the question of whether D'Londre Minifield was shot on the ground or on the fence is ancillary, not material, to the claims. However, the court finds that the circumstances of the death, beyond the nature of the gunshot wound, are material to determining whether Sills is guilty of contributing to D'Londre Minifield's death. The factual dispute of whether D'Londre Minifield was shot on the fence, as plaintiff alleges, or on the ground, as defendant alleges, is at the heart of the wrongful death and excessive force claims.

Sills contends that Minifield has not carried her burden of providing any evidence that would be admissible at trial to contradict the conclusion that D'Londre Minifield sustained a contact wound, rendering plaintiff's theory of the case impossible. In responding to a motion for summary judgment, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" <u>Glynn</u>, 710 F.3d at 213 (quoting <u>Anderson</u>, 477 U.S. at 252). It must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.</u>,

407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). While a jury could certainly agree with Sills, the testimony by Green, Grafton and Friesen placing D'Londre Minifield on the fence prior to his removal by the officers is starkly at odds with the officers' account of the incident. Plainly, material facts are in dispute as to how D'Londre Minifield died and whether defendant Sills bears any responsibility for his death. As such, Sills' motion for summary judgment as to Counts Two and Six is **DENIED**.

## III.

Sills' argument as to the forensic evidence brought in focus the putative expert testimony of two retired police officers designated by plaintiff, Charlese A. Feldbush and Gerald A. Summers. Each of these retired police officers authored reports critical of the investigation of the D;Londre Minifield death by the Winchester Police Department, the State Medical Examiner, and the Virginia State Police as well as the conclusion that D'Londre Minifield's gunshot wound was self-inflicted. Minifield seeks to introduce these witnesses as experts to (1) the manner in which the criminal investigations following the death of D'Londre Minifield were conducted and (2) the conclusions about the manner of death the former officers would have drawn given the nature of the gunshot wound.

The court is obligated to serve as gatekeeper where expert opinion evidence is offered to determine whether an expert witness is qualified and whether an expert opinion is grounded in objective underlying scientific methodology, as opposed to mere speculation or conjecture.

11

Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-590, 595 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-142 (1991). The applicable rule governing admissibility of testimony by experts is Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The applicable rule governing the legitimacy of underlying bases of opinion testimony by experts is Federal Rule of Evidence 703, which provides in part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703. In other words, expert testimony that can assist the trier of fact is to be admitted at trial where the witness is qualified and a preliminary assessment of his testimony finds "the reasoning or methodology underlying the [proffered] testimony is scientifically valid and . . . that reasoning or methodology properly can be applied to the fact at issue." Daubert, 509 U.S. at 592-593. In order to qualify as an expert, an individual must possess the requisite knowledge, skill, experience, training or education. Virginia Vermiculite, Ltd. v. W.R. Grace & Co. Conn. & The Historic Green Springs, Inc., 98 F. Supp. 2d 729, 732 (W.D. Va. 2000).

Feldbush and Summers appear to have sufficient experience and specialized knowledge about police investigations to allow them to offer opinions under Federal Rule of Evidence 702 about the investigation of D'Londre Minifield's death by local and state law enforcement authorities. What is not clear at this point is whether either Feldbush or Summers possess sufficient knowledge, skill, experience, training or education under Rule 702 to permit them to testify as to the nature of the gunshot wound sustained by D'Londre Minifield. This issue appears to turn on the examination of the wound and involves the contested presence of soot or stippling[4] at the projectile entry site. Certainly, the State Medical Examiner may provide her medical opinion as a forensic pathologist as to the nature of the gunshot wound based on her examination of D'Londre Minifield's body and her medical training. At this point, however, there is no basis to suggest that these two former police officers have a sufficient expertise to provide what is essentially the opinion of a medically trained pathologist.

The court must be mindful that experts have the potential to be misleading if their testimony is not reliable. Expert testimony with a greater potential to mislead than to aid the jury should be excluded. See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (citing United States v. Dorsey, 45 F.3d 809, 815-16 (4th Cir. 1995)). While plaintiff's counsel asserts that these experts are well-qualified to render such opinions, the court is not

---

[4] "The principle [sic] indicator of close range firing is stippling, that is, a pattern of tiny, punctuate abrasions in the skin surrounding the entrance wound. Stippling is caused by unburned particles of gunpowder striking the skin. In contrast to other substances that may be deposited on the skin, such as soot, stippling cannot be washed away. The presence of stippling indicates that the muzzle of the gun was within 2 feet of the victim's body when it was discharged. Contact firing range occurs when the muzzle of the gun is in contact with the skin at the time of discharge. Contact range wounds are commonly seen in suicidal firearm injuries. These wounds are often characterized by a dense pattern of combusted gunpowder residue or soot within and around the wound margin. Soot is lighter in weight than unburned particles of gunpowder. Most of soot will, therefore, only carry a few inches from the muzzle of the gun before fallng away." J. Scott Denton, Adrienne Segovia and James A. Filkins, "Practical Pathology of Gunshot Wounds." Archives of Pathology and Laboratory Medicine: Sept. 2006, Vol. 130, No. 9, at 1283-1289.

convinced that they meet the Rule 702 standard. In short, the court has not been presented with sufficient evidence that either retired police officer possesses sufficient expertise to render an opinion, based on D'Londre Minifield's head wound, as to the distance of the gun from his head when it was discharged. Absent some showing, to be offered at an evidentiary <u>Daubert</u> hearing conducted prior to trial, that Feldbush or Summers possesses a sufficient basis under Rule 702 to offer an opinion as to the nature of gunshot wounds and the conclusions to be drawn from such analysis, neither of these tired police officers may testify as to D'Londre Minifield's wounds at trial.

## IV.

At the February 13, 2020 hearing, Minifield asked again to reinstate Count Three, re-alleging conspiracy to cover up a police-involved shooting against a host of defendants she voluntarily dismissed in 2018. Minifield seeks to reassert this claim against Sills, the only remaining defendant in this action currently, and seeks to bring back as defendants to this claim either Winchester Officers Ivins, King, Medina, Shelton, and Deputy Bradford of the Frederick County Sheriff's Department; or, in the alternative, just Ivins alone.

At the outset, it is unclear whether Count Three alleges a conspiracy to violate 42 U.S.C. § 1985(3) or 42 U.S.C. § 1983. This confusion stems from several anomalies in the pleading. First, although Count three expressly references § 1985(3) in its caption, the allegations of Count three facially fail to state a claim under § 1985 as they include no hint of an allegation that the conspiracy to cover up the shooting was motivated by racial animus.[5] Second,

---

[5] Minifield mentions, for the first time, the alleged racial animus in a reply to Bradford's response to the motion (second) to amend the Fourth Amended Complaint. ECF No. 212 at 8-9. However, a motion to dismiss analysis is limited to the four corners of the pleading.

paragraph 231 of Count Three expressly references § 1983 as applicable to the conspiracy. Third, paragraph 232 of Count Three alleges that defendants acted "under color of states [sic] law," an element of a § 1983 violation, but not of § 1985. Fourth, the first four complaints in this case allege a § 1983 conspiracy to cover up the shooting. See Compl., ECF No. 1, at 41; Am. Compl., ECF NO. 50, at 27; Second Am. Compl., ECF No. 54, at 27; and Third Am. Compl., ECF No. 62, at 27. The court will evaluate the merits of reviving Count Three under both possible readings of the language below.

Minifield cites the Rule 15(a) standard in her motion to amend, which provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. Rule 15(a). However, the timing of this motion is problematic. Rule 16(b) provides that "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. Rule 16(b). The Fourth Circuit has held that when the deadlines provided by the scheduling order have passed, the good cause standard must be satisfied to justify amending the pleadings. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). Moreover, in the order reflecting plaintiff's motion to withdraw Count Three, the court stated that any motion to bring back a count dismissed with prejudice would require a showing of good cause, which will be "scrupulously" reviewed. Order, ECF No. 175.

First, the court finds that Minifield failed to demonstrate good cause and lack of prejudice to justify bringing back the conspiracy alleged in Count Three as to any previously dismissed defendants. Second, the court finds that a § 1985 claim would be futile, even if allowed to proceed against Sills alone. Parvizian, 535 F.3d at 298 (citing HCMF Corp. v. Allen, 238 F.3d 273, 276–77 (4th Cir.2001))("A motion to amend should be denied only where it

would be prejudicial, there has been bad faith, or the amendment would be futile."). But prejudice and futility do not defeat a § 1983 against Sills and unnamed co-conspirators as the claimed cover-up has long been a central aspect of this case.

## A.

As a preliminary matter, the court will not allow Minifield to bring back a conspiracy claim, either under § 1983 or § 1985, against any previously dismissed defendants because Minifield has not demonstrated good cause to warrant bringing back dismissed parties and because these defendants would be prejudiced. Indeed, the case has moved on after Minifield dropped Count Three against every Winchester Police Department defendant as well as Bradford more than one year ago. Depositions have been taken of several witnesses and dispositive motions have been filed. It would be manifestly unfair and prejudicial to the defendants voluntarily dismissed in 2018 to be brought back into this case without having had a full opportunity to participate in their defense. The case currently proceeds against only one named defendant and the court finds no reason to bring back others.

The court has considered whether Minifield demonstrated good cause to reassert a claim voluntarily dropped in 2018 against a myriad of dismissed defendants. "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel Cty., Maryland, 182 F. App'x 156, 162 (4th Cir. 2006). The Fourth Circuit has found that discovering a new defense upon closer review of the available material is insufficient to show good cause for leave to amend, even if the opposing party had notice as to the availability of this defense. Parvizian, 535 F.3d at 298. Essentially, the party must show

a justification for the lack of timeliness of the amendment as well as relative diligence on the part of the moving party. Cook v. Howard, 484 F. App'x 805, 816 (4th Cir. 2012). The record shows neither justification nor diligence.

When asked at the February 13, 2020 hearing to provide a basis for moving to add back multiple defendants on this previously abandoned claim, Minifield's counsel provided three reasons: (1) the existence of private communications between officers evidenced by Ivins and Sills' depositions; (2) the additional eyewitness account in Kayla Friesen's deposition; and (3) Bradford's claimed testimony that no officers discussed finding a gun under Minifield at the scene. None of these reasons to recall dismissed defendants withstands scrutiny.

First, Minifield's counsel argued that Officers Sills and Ivins had been deposed and testified that they communicated with other officers by means other than official police radio, suggesting an opportunity to conspire and implicating Ivins in the alleged conspiracy. But there is nothing new about this testimony, as Minifield made allegations of "Private Communications Between Police Officers" in her Fourth Amended Complaint filed in 2018. Fourth Am. Compl., ECF No. 117 at 17-18. As detailed in paragraphs 116 through 119 of the Fourth Amended Complaint, Minifield alleged that the officers on the scene "engaged in hidden communications . . . when they discussed the events and circumstances surrounding [D'Londre] Minifield's death and specific conduct in covering up the same." Id., at ¶ 119. Minifield had enough detail regarding this contention in 2018 when the Fourth Amended Complaint was filed that she specifically claimed that "[a]pproximately Twenty-five (25) instances of communications being taken off the police radio and conducted via hidden cell phone communications." Id. at ¶ 117 n.2. In short, the claim of secret communications

between the officers facilitating the conspiracy is nothing new as it was expressly pled as part of the claim Minifield agreed to voluntarily drop in 2018. Finally, even if Sills' and Ivins' deposition testimony as to the off-line communications was truly new to Minifield, it is difficult to understand why Minifield waited until January 2020 to seek renewal of the conspiracy claim against Ivins as the relevant depositions were completed on May 28, 2019. At the hearing, counsel for Minifield stated that while the depositions are not new, identifying the gap in radio communications was discovered by counsel recently. However, this fails a showing of diligence, required by the good cause standard.

Second, Minifield relies heavily on the testimony of eyewitnesses Green, Grafton and Friesen that they saw D'Londre Minifield on the chain-link fence and moved to the ground by multiple officers. Minifield argues that these overt steps implicate other officers at the scene in the conspiracy, either as active contributors or as passively complicit. Although Green and Grafton were not deposed until July 24, 2019 and Friesen not until January 23, 2020, there is nothing new in their testimony suggestive of a conspiracy to cover up a police shooting. At the hearing and in briefs, Minifield focuses on the tension between the directly conflicting narratives, but this conflict is not new. In fact, the Fourth Amended Complaint, filed August 14, 2018, recounts press reports that Green saw "a whole bunch of police pull him off the fence and slam him on the ground and start doing CPR," id. at ¶ 133, and that Friesen "saw police shoot [D'Londre] Minifield as he was about to climb a fence." Id. at ¶ 138. The fact that Green and Friesen had provided contemporaneous statements that Minifield was on the fence at the time they heard a gunshot and was later taken off the fence by law enforcement has been well known to Minifield throughout this case. Certainly, she was aware of those

witness accounts when she voluntarily dismissed all City of Winchester officers in 2018. Minifield has pointed to no new insight derived from the three accounts of D'Londre Minifield's death that would justify asserting Count Three against defendants dismissed long ago.

Third, Minifield strives to establish good cause by arguing that former defendant Kristen Bradford's deposition corroborates Minifield's claim that no gun was found on D'Londre Minifield. With this, Minifield seeks to implicate Bradford and the officers present at the scene of D'Londre Minifield's death in a conspiracy to plant a gun. Minifield asks the court to focus on page 179 of Bradford's testimony, suggesting it breathes new life into her conspiracy claim. Pl.'s Br. Supp. Mot. To Am., ECF No. 202-1, at 179. Review of her testimony suggests otherwise. According to Minifield's representations, Bradford testified that she did not hear any Winchester Police Department officers state that they found a gun under or near D'Londre Minifield. Minifield argues that conversation at the scene would naturally center on a gun if one had been found. Therefore, Minifield concludes, Bradford's lack of memory of any such conversation is evidence that the gun was planted later, consistent with plaintiff's conspiracy theory. However, Bradford's deposition clearly reflects that she said "Oh, I don't know," in response to a question about what she saw or heard at the scene. Bradford again states, "I don't remember if they were talking or not," when pressed, and when asked whether she overheard discussion about specific subject matter, she again stated, "No. I don't remember." Id. at 178-79. Bradford's failure of recollection does not constitute new evidence that the officers covered up the planting of a gun under D'Londre Minifield, as

plaintiff suggests. In sum, Minifield has not demonstrated good cause sufficient to bring back the § 1985 conspiracy against the previously dismissed defendants.

Further, bringing back Count Three as to any new defendants would amount to unfair prejudice. At the request of the parties, the trial of this case, initially brought in 2017, has been continued several times and is now is set for April 13, 2020. To allow Minifield to add multiple defendants back to the case after discovery has closed and summary judgment motions filed and argued would only serve to delay the trial of this long languishing case. The delay in this case is attributable, in part, to plaintiff's lack of timeliness and diligence. Minifield's counsel chose to voluntarily drop Count Three in 2018 and conceded the absence of evidence of excessive force on the part of Officer Ivins in open court on July 10, 2019. To join new defendants on the eve of trial subjects them to the outcome of proceedings in which they have been unable to participate for over a year and denies them the fair opportunity to prepare their defense. Justice would not be served by further delay in this case occasioned by counsel's change of heart on proceeding against defendants previously dismissed.

## B.

The court turns to the matter of reviving Count Three against Officer Sills alone, either as a § 1985 or § 1983 conspiracy claim. Sills cannot claim prejudice as she has had the full opportunity to participate in her defense and develop the case, as opposed to the defendants Minifield abandoned some time ago. Additionally, she cannot claim surprise as the theory of a conspiracy has been an animating feature of this case since its inception. Moreover, while the court did not find good cause sufficient to reintroduce defendants long dismissed, the existence of admissible evidence that has been generated since Count Three's dismissal, which

corroborates the conflicting cover-up narrative asserted by Minifield in the Complaint, is sufficient to revive a Count Three conspiracy claim against the remaining defendant, Sills. The court evaluates the futility of a conspiracy claim under § 1985 and § 1983 below.

The court finds that lacking any allegation of racial animus motivating the claimed cover-up, reassertion of a civil rights conspiracy to violate § 1985 would be futile. To survive a motion to dismiss, Count Three must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Therefore, in considering a motion to dismiss for failure to state a claim, the court must accept all factual allegations as true, draw reasonable inferences in favor of the non-moving party, and resolve all ambiguities in favor of the non-moving party. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Minifield failed to state a plausible claim for § 1985(3) conspiracy. Section 1985 provides a cause of action for civil conspiracy:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). In order to establish a sufficient cause of action for § 1985(3) conspiracy, a plaintiff must prove: (1) a

conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. <u>Simmons</u>, 47 F.3d at 1376; <u>See also</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102–03, 91 (1971). The Fourth Circuit fastidiously evaluates § 1985 claims, stating that "[t]o avoid evisceration of the purposes of qualified immunity, courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." <u>Gooden v. Howard Cty., Md.</u>, 954 F.2d 960, 969–70 (4th Cir. 1992).

Minifield's § 1985 conspiracy claim is futile because it insufficiently alleges racial animus. The claim must plead motivation by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." <u>Harrison v. Prince William Cty. Police Dep't</u>, 640 F. Supp. 2d 688, 708 fn 4 (E.D. Va. 2009); <u>Carpenters v. Scott</u>, 463 U.S. 825, 835 (1983). The Fourth Circuit has affirmed that racial animus presents a high bar. <u>McFadyen v. Duke Univ.</u>, 786 F. Supp. 2d 887, 969 (M.D.N.C. 2011), <u>aff'd in part, rev'd in part, dismissed in part sub nom.</u> <u>Evans v. Chalmers</u>, 703 F.3d 636 (4th Cir. 2012). Racial animus "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Id.</u> at 271–72 (citations omitted). "This discriminatory intent must be shared by all of the conspirators, and 'willful blindness' to

the discriminatory intent of others is insufficient to establish a claim under § 1985." Id.; See Simmons, 47 F.3d at 1378.

Minifield fails to demonstrate that the alleged cover-up conspiracy involving Sills and others was racially motivated. The pleadings neither explicitly allege racial animus nor do they sufficiently assert it through inference. The pleading mentions: (1) D'Londre Minifield was a twenty year old African American male, ECF No. 117 at 2; (2) "[D'Londre] Minifield was aware of the stories, as the entire public is – black man, doing nothing wrong, shot to death by overzealous, stressed out, overworked, police officers who lack adequate training because the Municipality (WPD) does not deem it important to train 33 officers on the use of excessive force, how to deal with the African-American community, or even on the appropriate requirements of a simple stop," Id. at 32-33; (3) a fist fight among "numerous black males" instigated the police chase, Id. at 8; (4) the race of the suspects was communicated over the radio, Id. at 9, 28; and (5) "Shooting and killing an unarmed black man who is fleeing police, who is not suspected of a crime, and who does not fit the description of the current suspect, is a clear violation of the constitutional right to be free from the use of excessive force," ECF No. 117 at 15.

The Fourth Circuit has held that a mere statement that the officers were white and that the alleged victim was black is insufficient to show racial animus. Gooden v. Howard Cty., Md., 954 F.2d 960, 969 (4th Cir. 1992). The Fourth Circuit has also held that the existence racial tension in the community is insufficient to show the conspirators acted with racial animus. McFadyen, 786 F. Supp. 2d at 969. Additionally, even if plaintiff could plausibly claim that Sills was motivated to shoot D'Londre Minifield because of his race, she could not also

claim that Sills, and all the other officers in the alleged conspiracy, were motivated by race to cover up the facts of the death. As the court noted in Wilkerson v. Thrift, 124 F. Supp. 2d 322, 328–30 (W.D.N.C. 2000), "[t]here is another reason for the Defendants' conduct which is just as likely as racial animus: ...to avoid discipline for the alleged use of excessive force." Indeed, not only does Minifield fail to plead racial animus, she affirmatively pleaded an alternative reason for the cover-up. Paragraph 227 states: "There is no allegation that [D'Londre] Minifield threatened or was ever a threat to any officer or any other person. Given the absence of said conduct, the WPD [Winchester Police Department] Defendants have opted to conceal the truth rather than see an officer face the consequences for violating the law." Fourth Am. Compl., ECF No. 117, at ¶ 227. A § 1985 conspiracy claim would not survive a motion to dismiss, the court will not resurrect Count Three under this theory of liability.

## C.

Nevertheless, the fact that the court finds a § 1985 conspiracy under Count Three facially deficient does not mean that the claimed conspiracy to cover up the shooting is not properly a part of this case.

As noted previously, it is unclear whether Count Three claims a violation of § 1985 or § 1983. As in Harrison v. Prince William Cty. Police Dep't, 640 F. Supp. 2d 688, 708 fn 4 (E.D. Va. 2009), "[t]he Complaint can be read to assert a conspiracy claim under 42 U.S.C. § 1985(3) as well as a similar claim under 42 U.S.C. § 1983." To plead civil conspiracy under § 1983, Minifield must state facts sufficient to allege plausibly that the officers "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in

[Minifield's] deprivation of a constitutional right (in this case the right to access the courts)." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996). Acting jointly can include when "one officer watches an open breach of law and does nothing to seek its prevention." Hafner v. Brown, 983 F.2d 570, 578 (4th Cir. 1992). The Fourth Circuit also has held that the pleading, to survive a motion to dismiss, but also plausibly state a "common purpose." Ruttenberg v. Jones, 283 F. App'x 121, 132 (4th Cir. 2008).

While the § 1985(3) conspiracy claim is decidedly futile, a § 1983 conspiracy claim founded on the claimed cover-up is not. Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (4th Cir. 1996)) ("To establish a civil conspiracy under § 1983, Appellants must present evidence that the Appellees acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in Appellant's deprivation of a constitutional right (in this case the right to access the courts."); Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992). Rule 8(e) of the Federal Rules of Civil Procedure states that "[p]leadings must be construed so as to do justice." Given the facts of this case, justice requires that the court construe Count Three as a conspiracy to cover up the shooting under § 1983 and allow it to proceed to trial against defendant Sills and unnamed co-conspirators.[6] Indeed, the claimed cover-up has been a central feature of this case since its outset.

The court has already concluded that bringing back dismissed defendants would unduly prejudice them. There is no legal requirement that a conspiracy claim proceed against all named conspirators. "A plaintiff need not sue all conspirators; he may choose to sue but one."

---

[6] Because the cover-up claim is dependent upon the diametrically differing accounts of the shooting, sufficient material facts in dispute exist to defeat a Rule 56 motion as the cover-up conspiracy claim.

Walker Distrib. Co. v. Luck Lager Brewing Co., 323 F.2d 1, 8 (9th Cir. 1963). As the court

recently noted in Arbelaez v. City of New York, No. 17-CV-6543 (JMF), 2019 WL 5634174,

at *3 (S.D.N.Y. Oct. 31, 2019):

> "To prove a § 1983 conspiracy, a plaintiff must show: (1) an
> agreement between two or more state actors or between a state
> actor and a private entity; (2) to act in concert to inflict an
> unconstitutional injury; and (3) an overt act done in furtherance
> of that goal causing damages." Pangburn v. Culbertson, 200 F.3d
> 65, 72 (2d Cir. 1999). Critically, however, the law does not require
> that a plaintiff sue all members of a conspiracy in order to
> maintain a suit against any of them. See, e.g., Lesavoy v. Lane,
> 304 F. Supp. 2d 520, 537 (S.D.N.Y. 2004), aff'd in part and
> vacated in part on other grounds sub nom. Lesavoy v. Gattullo-
> Wilson, 170 F. App'x 721 (2d Cir. 2006); see also,
> e.g., U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 12
> 51 (10th Cir. 1988) ("It is axiomatic that since coconspirators are
> jointly and severally liable for all damages caused by a conspiracy,
> a private plaintiff need not sue all the conspirators, but may
> choose to proceed against any one or more of them." (internal
> quotation marks omitted)). Indeed, holding conspirators
> individually liable for their co-conspirators' acts is the whole
> point of conspiracy law.

Therefore, a § 1983 conspiracy claim may only be brought against defendant Sills and unnamed

co-conspirators.

The Complaint, taken as a whole, sufficiently pleads a claim under § 1983 that Sills and

unnamed co-conspirators conspired to engage in a cover-up. Indeed, the first three paragraphs

of the Fourth Amended Complaint frame the "NATURE OF ACTION" as follows:

> 1.     This is a civil action for damages and injunctive relief
> under 42 U.S.C. § 1983, 42 U.S.C. § 1986, 42 U.S.C. § 1988(b),
> and the common law of the Commonwealth of Virginia arising
> from the willful and wanton killing of D'Londre Minifield by
> Winchester police officers who then attempted to cover up their
> gross use of excessive force by asserting that [D'Londre]
> Minifield shot himself in the back of the head while being
> pursued by law enforcement.

2.      From February 28, 2016, Defendants, individually and in concert, conspired to cover-up the events, and circumstances surrounding a police homicide. They, individually and in concert, covered up a police officer's unlawful discharge of a firearm, which terminally injured an unarmed twenty (20) year old African America (sic) male evading unlawful arrest, by asserting the Decedent committed suicide.

3.      Produced reports relied on the inconsistent and factually impossible false statements given by Winchester police officers who were present and/or participated in a foot pursuit of D'Londre Minifield as he fled unlawful detainment and police apprehension.

Fourth Amended Complaint, ECF No. 117, at ¶¶ 1-3. Many other allegations reference the conspiracy to cover up the shooting. See id. at ¶¶ 94, 97-99, 116-126, 141-152, 155-160, 190, 195, and 227. The statements, taken together, present a narrative that identifies an unlawful act witnessed by others, motivation to cover up the unlawful act, opportunity for a "meeting of the minds," overt steps taken in furtherance of the cover-up, and injury to the survivor, plaintiff-Minifield, whose access to the truth and evidence were allegedly hampered by the conspiracy. Therefore, the court finds that the Complaint, as it stands, sufficiently pleads a theory of §1983 conspiracy.

## VI.

For these reasons, the court cannot conclude that it is in the interests of justice to allow Minifield to restart her lawsuit against defendants previously dismissed. The case will proceed to trial against defendant Sills under Counts Two and Six along with the § 1983 conspiracy in Count Three. There is no reason to delay the present trial as the § 1983 conspiracy claim relies on the same evidence as the excessive force and wrongful death claims, and the cover-up

allegations have long been a part of this case. Consequently, there can be no claim of surprise or prejudice to defendant Sills. The trial will continue as originally scheduled on April 13, 2020.

An appropriate Order will be entered.

Enter: This 3rd day of March, 2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge